# PALMER *v.* THOMPSON.

CRIMINAL LAW; APPEAL BONDS; HABEAS CORPUS; ARREST ON WARRANT
FROM ANOTHER JURISDICTION; RES JUDICATA.

1. An appeal by the United States marshal for this District from an
order of the lower court in *habeas corpus* proceedings, discharg-
ing the petitioner from custody, may be prosecuted without an
appeal bond; *following* Leonard v. Rodda, 5 App. D. C. 256.
2. Upon an appeal by the United States marshal for this District from
an order of the lower court discharging from his custody the peti-
tioner in *habeas corpus* proceedings, who had been arrested under
a *capias* issued by a Federal court of another jurisdiction, in
which he had been convicted but not sentenced in a criminal pro-
ceeding there, this court cannot consider the question whether
the indictment in such other jurisdiction showed upon its · face
that it was found for a crime committed more than three years
previous thereto, nor the question whether the statute under
which the indictment was found was enacted after the commission
of the offense charged, since they were matters of defense in the
original proceeding and are not jurisdictional facts subject to
inquiry in a collateral proceeding.
3. In the absence of an act of Congress conferring the power, a Federal
court in one district has no authority to issue its writ to the
marshal or any officer of another Federal district, commanding
him to arrest a person within his jurisdiction but outside that
of the court issuing the writ; and such power is not conferred
either by Sec. 716, R. S. U. S., giving judges of Federal courts
power to issue " all writs not specifically provided for by statute,
which may be necessary for the exercise of their respective juris-
dictions and agreeable to the usages and principles of law;" nor
by Sec. 1014, R. S. U. S., providing for the arrest of any criminal
by the courts and officers of one jurisdiction for the purpose of
his removal to another jurisdiction for trial.
4. It would *seem* that a warrant of arrest issued by a Federal court
to apprehend a defendant who is in another jurisdiction, should
be issued to the United States marshal of the district wherein the
court sits; but whether such marshal can then execute it outside
of his own district by taking the defendant into custody without

having recourse to the proceedings prescribed by Sec. 1014, R. S. U. S., is questionable.

5. The provision made by Sec. 1014, R. S. U. S., for the arrest and removal for "trial" of a party found in another jurisdiction, covers an arrest and removal for the purpose of receiving the sentence imposed by the court, in a proceeding in which he has already been convicted but not sentenced; a trial not being terminated by verdict but by judgment.

6. Where one convicted of crime but not sentenced in a Federal court of another jurisdiction is arrested here for removal to such other jurisdiction, and upon *habeas corpus* proceedings here is discharged upon the ground that the removal provided for by Sec. 1014, R. S. U. S., is only removal for trial and not removal after trial, such discharge, although erroneous, is an adjudication, and upon a second arrest, is conclusive in his favor as *res judicata*, in the absence of a showing of some fact for holding him not existing at the time of his discharge.

Chief Justice ALVEY dissenting.

No. 1186. Submitted May 7, 1902. Decided June 23, 1902.

HEARING on an appeal by the United States marshal, the respondent in *habeas corpus* proceedings, from an order of the Supreme Court of the District of Columbia discharging the petitioner from custody.          *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of the District of Columbia in a case of *habeas corpus* wherein the appellee, Robert M. Thompson, was discharged from the custody of the United States marshal.

From the record it appears that, on May 1, 1885, there was an indictment filed against the appellee, Robert M. Thompson, in the District Court of the United States for the eastern division of the western district of Tennessee, where the appellee was then resident, for a violation of the provisions of section 5485 of the Revised Statutes of the United States, by wrongfully withholding from a certain pensioner therein named certain pension money collected by the appellee for account of the pensioner. He was arrested, tried, and convicted; but for some reason sentence was deferred

until the following term of the court, which occurred in October, 1885.   In the meantime he gave bond, or rather entered into recognizance, for his appearance at such subsequent term.   He failed, however, to appear at the time indicated; and his recognizance was declared forfeited; and continuances of the cause were thereafter entered from time to time.

It seems that, after he had entered into the recognizance, he left the State of Tennessee, came to the District of Columbia, and has since that time resided here.

On May 5, 1888, proceedings were instituted before a United States Commissioner in this District for his apprehension and return to the State of Tennessee to receive his sentence under the conviction.   He was arrested and brought before the Commissioner, and was committed to the jail of the District in default of bail.   He immediately sued out from the Supreme Court of the District of Columbia a writ of *habeas corpus* addressed to the warden of the jail, to procure his release from the detention.   Upon hearing before one of the justices of that court on June 5, 1888, he was discharged from custody, on the ground, as stated in the opinion rendered at the time by the justice, that section 1014 of the Revised Statutes of the United States, under which it was assumed he was sought to be held, did not provide for such a case as his.   It was construed that the statute authorized the arrest and removal of an offender for trial, but not for sentence after trial had and conviction by the verdict of a jury.

Immediately thereafter and on the same day the appellee was rearrested at the instance of those who had become sureties upon his bond in the Federal court in Tennessee.   Again he sued out the writ of *habeas corpus* from the Supreme Court of the District; and again he was discharged from custody, this time by another of the justices of the court upon the ground, as held by him, that the Commissioner before whom the bond had been taken was without authority of law to take it.   The order of discharge was made on June 9, 1888.

Further than the regular entry of continuances of the case from term to term in the Federal court in Tennessee, the record before us discloses no further or other proceedings had until April 22, 1901, when a *capias* was issued from that court, addressed to the United States marshal for the District of Columbia, and commanding him to arrest the appellee and have him before the court in Tennessee at the next ensuing October term thereof to receive the sentence of the court upon the conviction theretofore had. The marshal for this District sought to execute the *capias,* and arrested the appellee. Again the appellee had recourse to the writ of *habeas corpus,* which he sued out before one of the justices of the Supreme Court of the District; and it is the proceedings thereon that are now before us for review. He was discharged from custody by order of the court rendered on December 23, 1901; and from the order of discharge the marshal has prosecuted the present appeal.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, and *Mr. Peyton Gordon,* Assistant, for the appellant:

1. The writ of *habeas corpus* cannot operate as a writ of error. 9 Encyc. Pl. & Pr. 1062, and authorities cited.

2. Appellant was not a party to either of the other *habeas corpus* proceedings, nor was the validity of a writ from the Tennessee court, similar to the one under which he arrested and held the appellee, in any manner involved in the consideration and determination of the previous *habeas corpus* cases. A discharge of a party under a writ of *habeas corpus* from the process under which he is imprisoned discharges him from any other confinement under the process; but not under any other process which may be issued against him under the same indictment. *Ex parte Milburn,* 9 Pet. 710.

3. The only substantial question involved in the present appeal is whether, under the circumstances disclosed in the record, the Federal court in Tennessee had lawful authority to issue the writ to the marshal of the District of Columbia

under which he was arrested by said marshal. It is submitted that that court had such power. Secs. 716 and 761 of the Revised Statutes of the United States; *In re Spencer,* Mackey & Mac. 433; *In re Alexander,* 1 Low. 531; *In re Christian,* 82 Fed. Rep. 885.

*Mr. George C. Meigs* and *Mr. Edwin Forrest* for the appellee:

A judgment in *habeas corpus* proceedings, either discharging the prisoner or remanding him, cannot be reviewed on appeal or writ of error unless authorized by statute. See English cases cited in *People* v. *Fairman,* 59 Mich. 568, and by Kent, Ch. J., in *Yates* v. *People,* 6 Johns. 337, 423–432; *McFarland* v. *Johnson,* 27 Tex. 106; *Bell* v. *State,* 4 Gill, 301, 304; 45 Am. Dec. 130; *Ex parte Jilz,* 64 Mo. 205; 27 Am. Rep. 218; *Hammond* v. *People,* 32 Ill. 446; 83 Am. Dec. 286; *Weddington* v. *Sloan,* 15 B. Mon. 147, 153; *Wade* v. *Judge,* 5 Ala. 130; *Guilford* v. *Hicks,* 36 Ala. 95; *People* v. *Conant,* 59 Mich. 565; *Coston* v. *Coston,* 49 Md. 500; *In re Coston,* 23 Md. 337; *People* v. *Schuster,* 40 Cal. 627; *In re Gill,* 17 S. W. Rep. (Ky.) 166; *Mead* v. *Metcalf,* 25 Pac. Rep. (Utah) 729; *Ex parte Mitchell,* 1 La. Ann. 413; *Ex parte Thompson,* 93 Ill. 89.

Mr. Justice MORRIS delivered the opinion of the Court:

1. On behalf of the appellee a motion has been made in this court to dismiss the appeal, on the ground that the United States, being the real party in interest, are not, as is alleged, authorized by law to appeal; and that if the marshal is to be regarded as the real party in interest, and not the United States, the appeal should be dismissed because he has no real interest in the subject-matter of controversy, and has given no appeal bond, as required by law and the rules of the court. But this question we decided adversely to the contention of the appellee in the case of *Leonard* v. *Rodda,* 5

App. D. C. 256, upon the authority of which the motion must be overruled.

2. In the appellee's petition for the writ of *habeas corpus* various reasons are specifically assigned for the invalidity of the proceeding against him; and these constitute the basis of the appellant's assignments of error. They may be reduced to five, as follows:

(1) That the indictment against the appellee appears on its face to have been found more than three years after the commission of the alleged offense.

(2) That the statute, under which the indictment was found, was enacted subsequently to the date of the commission of the alleged offense.

(3) That the Federal court in Tennessee was without authority in law to issue its warrant to the marshal for the District of Columbia for the arrest and removal of the appellee.

(4) That neither under section 1014 nor under section 716 of the Revised Statutes of the United States, both of which are relied upon for the purpose, is there authority for the arrest and removal of the appellee.

(5) That the discharge of the appellee under the former writ of *habeas corpus* on June 5, 1888, was an adjudication of the subject-matter of controversy, and is conclusive, in the absence of any new facts or conditions, which do not appear.

Of these the first and second require no consideration by us. They seem to be based upon a palpable misapprehension of the allegations of the indictment; and they do not appear to be insisted on in argument. Even if they had support in the record, they are not matters that can be considered upon *habeas corpus* proceedings. While the facts which they would imply are in a sense jurisdictional facts, they are not of such character as to be subjects of inquiry in a collateral proceeding. They constitute matters of defense in the original proceeding, and could and should have been there brought forward; and in all probability, if they have any

foundation whatever in fact, were there brought forward. At all events, they have no place here.

3. The principal question argued before us is whether the Federal court in Tennessee had authority in law for the issue of its warrant to the marshal of the District of Columbia for the arrest and removal of the appellee. And with this may be considered the other question, whether under sections 716 and 1014 of the Revised Statutes of the United States, or either of them, there is authority for such arrest and removal.

We may assume that it would not be incompetent for Congress to enact that, as occasion might require, the writs of the Federal court of any Federal district of the Union might be executed in any other Federal district, and might be directed to the marshal of such other Federal district for execution. But, in the absence of specific statutory enactment to that effect, it is undoubtedly the general rule of law that no court has authority or jurisdiction beyond the territorial limits of the district for which it has been established, notwithstanding that it may be, as in the present case, only one of numerous similar courts of the same sovereignty. No court can by its writ impose a duty upon an officer outside of those limits. It may well be that, under exceptional circumstances, it may direct its own officer for some specific purpose to go outside of its own territorial limits; but we cannot understand how it can assume any authority under the general powers vested in it to issue its precept to the officer of another jurisdiction, when it has no power to enforce the performance of the duty. We do not mean to be understood as saying that Congress may not grant this authority. On the contrary, we think that Congress has the power to do so. But we do not find in the statute law the evidence that it has done anything of the kind. In our opinion neither section 1014 nor section 716 of the Revised Statutes purports to grant any such power. The provisions of section 1014 are certainly inconsistent with the theory of such a grant of power; and there is no good ground to construe the power granted in section 716, " to issue all writs not specifically provided for by statute, which may be necessary for the exercise of

their respective jurisdictions and agreeable to the usages and principles of law," as intended to abolish the restrictions inherent in territorial limitation.

The duties of the marshals of the United States are prescribed by section 787 of the Revised Statutes, which provides that "it shall be the duty of the marshal of each district to attend the district and circuit courts when sitting therein, and to execute throughout the district all lawful precepts directed to him, and issued under the authority of the United States." Evidently the lawful precepts to be executed by him are those issued by the courts sitting in his own district, and not those of the courts of other districts to which he is not amenable, and which he cannot attend.

The only authority cited to the contrary of this is the case *In re Christian,* 82 Fed. Rep. 885, which arose in the western judicial district of Arkansas, and in which the learned justice who presided over the Federal district court in that district, held as follows:

"Under this statute (referring to Rev. Stat., Sec. 716), I think the judge of the central district of the Indian Territory has the power to issue his warrant, addressed to the marshal of the western district of Arkansas, to arrest Christian, and to send an officer here to take him back to that court to be dealt with as law and justice may require. This view is sustained by the case of *Oaksmith,* 11 Op. Attys. Gen. U. S. 127; *Randolph's case,* 2 Op. Attys. Gen. U. S. 564; 2 Moore on Extradition, Sec. 540; *Stanton's case,* Id. Sec. 541."

With all respect for the learned justice who pronounced this opinion, we find ourselves unable to concur in it, or to find support for it in the authorities which he cites. In *Randolph's case* the reference is to the opinion of that great jurist, Chief Justice Taney, when he was Attorney General of the United States. The question had been propounded to him officially, "whether the judge of the Supreme Court of the United States residing in the fifth district, or a district judge of one of the districts of Virginia, can issue a warrant for the arrest of Robert B. Randolph, for the assault committed in the District of Columbia on the President of the

United States; it having been ascertained that Randolph was now somewhere in the State of Virginia." And the answer of the Attorney General was:

"According to my view of the case, a warrant from any of the judges of the Circuit Court of this District (of Columbia) would warrant the arrest of Randolph anywhere in the United States; and I see no necessity for an application for any other. But as doubts have been taken from respectable authority on this point, and an attempt to arrest under such a warrant might be forcibly resisted and lead to violence, I advise that an application be made to the Chief Justice of the United States. If he issues a warrant, no one will question its legality. If he decides that he has no right to issue it, I shall be willing to believe that I am mistaken in the opinion which I have formed.  *  *  *  The United States possess more extensive powers in this District than they do in the States; but this must not destroy the identity of the government. An offense against the United States committed in the District is an offense against the same sovereignty as if committed in one of the States. . And I cannot imagine how the words or the spirit of the 33d section of the act of 1789 can be supposed to embrace the one and not the other." 2 Opinions of Attorneys General, p. 564.

*Oaksmith's case,* which is also referred to, occurred in 1864. Oaksmith had been indicted in the United States court in Massachusetts, but was not to be found within that State. When the opinion of the Attorney General was sought in the matter, Mr. Acting Attorney General Ashton, basing himself upon the preceding opinion of Attorney General Taney, said, " that either judge of the Circuit Court of the United States for the District of Massachusetts has authority, under the act of September 24, 1789, Sec. 33 (1 Stat. 91), to issue a warrant for the arrest of Oaksmith; and that under such a warrant he may be lawfully arrested anywhere in the United States." 11 Opinions Attorneys General, 127.

. In the case *In re Alexander,* 1 Lowell, 531, in the same Circuit Court of the United States for the district of Massa-

chusetts, the question was again raised; but it was not deemed necessary to decide it. There the court said:

" When an indictment has been found in one judicial district of the United States against the defendant not then within its jurisdiction, it has been much doubted whether the court in that district can issue its warrant to arrest the defendant wherever he may be found within the United States. The late Chief Justice Taney, then Attorney General, gave it as his opinion that the power was possessed by the courts (2 Opinions Attorneys General, 564); and this still appears to be the opinion of the office (11 Opinions, 127). I am not aware of any decision of a court or judge upon the point, and it is not necessary to decide it here."

It will be noticed that in no one of these judicial and official utterances before the case *In re Christian,* in 1897, is there any mention of the officer to whom the warrant is to be addressed and who is to execute it. While they all hold that the court wherein the indictment is found may or should issue the warrant of arrest, they do not determine that the warrant is to be issued to the marshal of the district where the arrest is to be made. This question is left undecided. In view of the inconsistency involved in the issue of a writ to an officer who is not amenable to the jurisdiction of the court which issues it, we prefer to think that the marshal of the district wherein the court sits is the proper officer to receive such warrant and to take the proper steps for its execution. Whether he can execute it outside of his own district by taking the offender into custody, without having recourse to the proceedings prescribed in section 1014 of the Revised Statutes, may well be questioned; but that he may do so through the instrumentality of those proceedings, we think to be quite clear.

Section 1014 of the Revised Statutes is section 33 of the act of September 24, 1789, referred to by Mr. Attorney General Taney. It is in the following terms:

" For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a Circuit Court to take bail,

\* \* \* or other magistrate of any State where he may be found, and agreeably to the usual mode of process against offenders in such State, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be to the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case. And when any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district court where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

By such process it would seem to have been sought to remove the appellee in this case to the State of Tennessee for sentence in 1888. That process, as we have seen, resulted in his arrest and detention, and subsequent commitment to the custody of the warden of the jail. Under the writ of *habeas corpus,* which he then sued out, it was held by the learned justice of the Supreme Court of the District who heard the cause, that the removal provided for by the statute, Sec. 1014, was only removal for trial, and that, as the trial had been had and was at an end, there was no warrant of law for any removal. But this reasoning we are compelled to regard as erroneous. The conclusion then reached simply offers a premium to offenders to fly from the jurisdiction of the court in which they have been convicted, if they can do so between conviction and sentence. Assuredly it amounts to no more than a travesty of justice if an offender may be removed for trial which may result in conviction, but not to receive the sentence which should follow conviction.

It was sought in the opinion rendered at the time to uphold the ruling by the authority of Blackstone. The statement of the noted commentator is cited where he says that " trial is the examination of the matters of fact in issue " (3 Comm. 330), which was explained as meaning " put in issue by the pleadings;" and also, the further statement that

"when the jury have delivered their verdict and it is re-
corded in court, they are discharged; and so ends the trial
by jury. Next follows the judgment." (3 Comm. 379.)

We think it very plain, however, that the term *trial* in
the statute is not to receive any such narrow and restricted
meaning. A more appropriate definition in the sense of the
statute is that given in 1 Inst. 124, which is this: "The
examination of a cause, civil or criminal, before a judge
who has jurisdiction over it, according to the laws of the
land." Trial, in the sense of the statute, is intended to in-
clude all the proceedings in a cause from the presentation
of the indictment to the pronunciation of the sentence or
judgment. It is not the equivalent of the expression *trial
by jury,* or of any other mode of trial of issues made up by
pleadings in court. It will be conceded that trial implies
decision; but the verdict of a jury is not necessarily the
decision of a cause, although it may ultimately shape the
decision. There may be, as we know, proceedings of great
importance between verdict and judgment, which may
greatly affect the trial. A trial is not terminated by a
verdict, but by judgment.

4. But the decision rendered by the Supreme Court of the
District of Columbia, or by the justice of that court who
heard the cause, on June 5, 1888, whereby the appellee was
discharged from the custody in which he was then held, al-
though in our opinion erroneous, is an accomplished fact.
It was an adjudication of the question at issue. The sub-
ject-matter of controversy became thereafter *res judicata;*
and it was pleaded as such in the present proceedings. We
cannot now correct the error that was then committed. We
have only to look to the fact that there was then an adjudica-
tion on the same subject-matter that is involved in the present
proceedings; and that no new ground is shown for holding
the appellee which did not exist at the time of his former
discharge. The *habeas corpus* act of Charles II, universally
in force in this country, either in its original form or by
substantial re-enactment, prohibits the recommitment for the
same charge of one who has previously been discharged there-

from under the writ. The authorities are·'believed to be unanimous that a second arrest for the same precise charge, without any new circumstances to justify the arrest, cannot be sustained. The law was.well stated in the case of *United States* v. *Chung Shee,* 71 Fed. Rep. 277, where it was said:

" If a prisoner is discharged from custody on the hearing of a writ of *habeas corpus,* such order or judgment amounts to an adjudication, and is conclusive in his favor as matter *res adjudicata* if he should be again arrested, unless some fact could be shown for holding him which did not exist at the time of his discharge."

The arrest of the appellee in 1888 was for his removal to the State of Tennessee to receive sentence there. That is the purpose of his present or recent arrest. The question in issue was whether he could lawfully be removed under the circumstances of the case. The same precise question under precisely the same circumstances is now again raised; and while we think that the former release was based upon an erroneous construction of the law, we think we are compelled to give it effect as a final adjudication.

We think that there was no error in the decision of the court below upon this hearing; and we are of opinion that the decision should be *affirmed. And it is so ordered.*

Mr. Chief Justice ALVEY dissented.